# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AQUELIA WALKER**, on behalf of herself and all others who are similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**AT&T, INC.**,<br><br>Defendant. | **Case No:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Aquelia Walker ("Plaintiff") individually and on behalf of all others similarly situated, brings this Class Action Complaint (the "Complaint"), and alleges the following against Defendant AT&T, Inc. ("AT&T" or Defendant"), based upon personal knowledge with respect to herself and upon information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE ACTION

1. Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard Plaintiff and other similar situated individuals' personal identifiable information ("PII"), including "full name, email address, mailing address, phone number, social security number, date of birth, AT&T account number and passcode."1

2. This class action arises out of the recent targeted cyberattack against AT&T that

[1] https://about.att.com/story/2024/addressing-data-set-released-on-dark-web.html (last visited April 10, 2024).

allowed a third party to access Defendant's computer systems and data, resulting in the compromise of highly sensitive PII (the "Data Breach").

3. Due to the Data Breach, Plaintiff and Class Members suffered ascertainable losses in the form of the benefit of their bargain, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the attack, emotional distress, and the imminent risk of future harm caused by the compromise of their PII.

4. Social Security numbers are particularly valuable to criminals. This information can be sold and traded on the dark web black market. The compromise of a Social Security number is particularly troubling because it cannot be easily changed and can be misused in a range of nefarious activities, such as filing fraudulent tax returns to steal tax refund payments, opening new accounts to take out loans, and other forms of identity theft.

5. The Data Breach was a direct result of AT&T's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect consumers' Private Information.

6. On or around March 2024, the details of 73 million former and current AT&T customer accounts were leaked online.[2]

7. Details of the Data Breach first became known in August 2021, "when a known threat actor, Shiny Hunters, offered up the records for sale on a hacking forum, with a 'buy it now' price of one million dollars." In March 2024, "that same data appears to have been made available for free by another threat actor, MajorNelson."[3]

8. This was not a passive data breach where, for example, it is unclear whether the

[2] https://www.forbes.com/advisor/personal-finance/att-data-breach-exposes-millions/; https://www.cbsnews.com/news/att-data-breach-2024-cbs-news-explains/ (last visited April 10, 2024).

[3] https://www.bleepingcomputer.com/news/security/atandt-confirms-data-for-73-million-customers-leaked-on-hacker-forum/ (last visited April 10, 2024).

compromised data was targeted or even seen. The data breach here occurred because an unauthorized third party was able to gain access to and obtain former and current AT&T customers' PII from AT&T internal computer systems.[4]

9. Defendant's Notice failed to disclose how it discovered the encrypted files on its computer systems were impacted, the means and mechanisms of the cyberattack, the reason for the delay in notifying Plaintiff and the class of the Data Breach, how Defendant determined that the Personal Information had been "accessed" by an unauthorized party, and importantly, what specific steps Defendant took following the Data Breach to secure its systems and prevent future cyberattacks.

10. However, Defendant did concede that its own "data-specific fields were contained in a data set released on the dark web."[5]

11. The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Personal Information from the foreseeable threat of a cyberattack.

12. By being entrusted with Plaintiff's and class members' PII for its own pecuniary benefit, Defendant assumed a duty to Plaintiff and Class Members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard Plaintiff's and Class Members' PII against unauthorized access and disclosure.

---

[4] https://www.malwarebytes.com/blog/news/2024/04/att-confirms-73-million-people-affected-by-data-breach; https://www.dallasnews.com/business/2024/03/31/what-we-know-about-the-att-data-breach-affecting-millions-of-current-and-former-customers/; https://www.techradar.com/computing/cyber-security/the-atandt-data-leak-highlights-the-importance-of-protecting-your-data; (last visited April 10, 2024).

[5] https://about.att.com/story/2024/addressing-data-set-released-on-dark-web.html (last visited April 10, 2024).

13. Defendant also had a duty to adequately safeguard this PII under controlling case law, as well as pursuant to industry standards and duties imposed by statutes, including Section 5 of the Federal Trade Commission Act (the “FTC Act”).

14. Defendant breached those duties by, among other things, failing to implement and maintain reasonable security procedures and practices to protect the PII in its possession from unauthorized access and disclosure.

15. As a result of Defendant’s inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff and approximately 73 million individual class members suffered injury and ascertainable losses in the form of out-of-pocket expenses, loss of value of their time reasonably incurred to remedy or mitigate the effects of the attack, the diminution in value of their personal information from their exposure, and the present and imminent threat of fraud and identity theft. This action seeks to remedy these failings and their consequences.

16. Upon information and belief, the injury to Plaintiff and Class Members was compounded by the fact that Defendant did not notify those affected that their PII were subject to unauthorized access and exfiltration until March 2024.

17. Defendant’s failure to timely notify the victims of its Data Breach meant that Plaintiff and Class Members were unable to immediately take affirmative measures to prevent or mitigate the resulting harm.

18. Despite having been accessed and exfiltrated by unauthorized criminal actors, Plaintiff’s and Class Members’ sensitive and confidential PII remains in the possession of Defendant. Absent additional safeguards and independent review and oversight, the information remains vulnerable to further cyberattacks and theft.

19. Defendant disregarded the rights of Plaintiff and Class Members by, *inter alia*, failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard PII; failing to take standard and reasonably available steps to prevent the Data Breach; failing to properly train its staff and employees on proper security measures; and failing to provide Plaintiff and Class Members prompt and adequate notice of the Data Breach.

20. In addition, Defendant failed to properly monitor the computer network and systems that housed the PII. Had Defendant properly monitored these electronic systems, it would have discovered the intrusion sooner or prevented it altogether.

21. The security of Plaintiff's and Class Members' identities is now at substantial risk because of Defendant's wrongful conduct as the PII that Defendant collected and maintained are now in the hands of data thieves. This present risk will continue for the course of their lives.

22. Armed with the PII accessed in the Data Breach, data thieves can commit a wide range of crimes including, for example, opening new financial accounts in class members' names, taking out loans in their names, using Class Members' identities to obtain government benefits, filing fraudulent tax returns using their information, obtaining driver's licenses in class members' names, and giving false information to police during an arrest.

23. As a result of the Data Breach, Plaintiff and Class Members have been exposed to a present and imminent risk of fraud and identity theft. Among other measures, Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft. Further, Plaintiff and Class Members will incur out-of-pocket costs to purchase

adequate credit monitoring and identity theft protection and insurance services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

24. Plaintiff and Class Members will also be forced to expend additional time to review credit reports and monitor their financial accounts for fraud or identity theft. And because the exposed information includes Social Security numbers and other immutable personal details, the risk of identity theft and fraud will persist throughout their lives.

25. Plaintiff brings this lawsuit on behalf of herself and all of those similarly situated to address AT&T's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information was unsecured and left open to the unauthorized access of any unknown third party.

26. Plaintiff, on behalf of herself and all other Class Members, brings claims for negligence, negligence per se, breach of implied contract, breach of fiduciary duty, and for declaratory and injunctive relief. To remedy these violations of law, Plaintiff and Class Members thus seek actual damages, statutory damages, restitution, and injunctive and declaratory relief (including significant improvements to Defendant's data security protocols and employee training practices), reasonable attorneys' fees, costs, and expenses incurred in bringing this action, and all other remedies this Court deems just and proper.

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because: (i) the amount in controversy exceeds $5 million, exclusive of interest and costs; (ii) the number of class members exceeds 100

and (iii) minimal diversity exists because many class members, including Plaintiff has different citizenship from Defendant.

28. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws, rights, and benefits of the State of California. Defendant has engaged in activities including (i) directly and/or through its parent companies, affiliates and/or agents providing services throughout the United States in this judicial district;; (ii) conducting substantial business in this forum; and/or (iii) engaging in other persistent courses of conduct and/or deriving substantial revenue from services provided in California and in this judicial District.

29. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover, Defendant is based in this District, maintains Plaintiff's and Class Members' Private Information in this District, and has caused harm to Plaintiff and Class Members in this District.

## PARTIES

***Plaintiff Aquelia Walker***

30. Plaintiff Aquelia Walker ("Plaintiff") is a citizen of the State of California. At all relevant times, Plaintiff has resided in Clovis, California.

31. For the past six years, Plaintiff has been Defendant's customer. Plaintiff provided her PII to Defendant. In receiving and maintaining her PII for its business purposes, Defendant expressly and impliedly promised, and undertook a duty, to act reasonably in its handling of Plaintiff's Private Information. Defendant, however, did not take proper care of Plaintiff's Private Information, leading to its exposure to and exfiltration by cybercriminals as a direct result of Defendant's inadequate cybersecurity measures.

32. On March 30, 2024, Plaintiff received notice of the Data Breach via email. Deeply concerned and troubled, Plaintiff immediately went to the internet to investigate the Data Breach because Plaintiff is worried about her PII being readily available for cybercriminals to sell, buy, and exchange.

33. Since approximately two years ago, Plaintiff has been experiencing an alarming increase in notifications that individuals are trying to obtain credit cards under her name, using her defunct debit card, and using the wrong bank pin. Around the same time, a fraudulent car loan was opened in Plaintiff's name and appeared on her credit report.

34. Within the past two years, Plaintiff not only experienced an increased in spam emails and texts, but also was made aware of fraudulent activity from the Social Security Administration that an unknown party was attempting to steal her identity and further steal Plaintiff's disability benefits.

35. As a result, Plaintiff was required to visit, in person, her local social security office to prove her identity.

36. Subsequently, and after Plaintiff's efforts not only validating her identity, but also hiring an attorney, Plaintiff currently receives permanent disability through NelNet.

37. Plaintiff has a free Credit Karma account and was informed that her information is and has been on the Dark Web for the past few years.

38. Plaintiff's main concern is her stolen identity and individuals pretending to be her when they are not. Plaintiff is further concerned about her credit being ruined and her personal information such as, *inter alia*, her address, phone number, and social security number being publicly available online.

***Defendant AT&T, Inc.***

39. Defendant AT&T, Inc. is a telecommunications company that provides, among other things, wireless network services, cellular data plans, cell phone plans, and Internet connection plans.

40. Defendant AT&T, Inc. is a corporation organized under the state laws of Delaware with its headquarters and principal place of business located at 208 S. Akard St. Dallas, TX 75202.

**FACTUAL ALLEGATIONS**

41. Defendant is one of the largest wireless carriers and internet providers in the country.[6]

42. Plaintiff and Class Members are current and former customers of Defendant.

43. Due to the nature of the services AT&T provides, it receives and is entrusted with securely storing consumers' Private Information, which includes, inter alia, individuals' full name, date of birth, Social Security numbers, and other sensitive information. Defendant promised to provide confidentiality and adequate security for the data it collected from customers through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

---

[6] https://www.globaldata.com/companies/top-companies-by-sector/technology-media-and-telecom/us-telecom-operators-by-mobile-subscriptions/#:~:text=AT%26T%20Inc%2C%20Verizon%20Communications%20Inc,of%20401%2C200%20people%20in%202021 (last visited April 10, 2024).

**A. The Data Breach, AT&T's Unsecure Data Management, and Disclosure of Data Breach**

44. On or about August 19, 2021, a criminal hacking group called "ShinyHunters" began selling on a hacking forum a database which, according to ShinyHunters, contains Personal Customer Data of over 70 million AT&T customers.[7]

45. While attempting to sell the database, ShinyHunters only revealed sample data from the compromised database, which included customers' names, addresses, phone numbers, Social Security numbers, and dates of birth.[8]

46. AT&T maintained, without providing any evidence, that the data samples leaked from the compromised database did not come from AT&T's systems and that AT&T had not been breached.[9]

47. AT&T also did not confirm whether the leaked data came from a breach of a third-party partner's information technology systems which may have held Private Information.[10]

48. ShinyHunters challenged AT&T's denials of the Data Breach coming from AT&T or one of its third-party partners, stating "I don't care if they don't admit. I'm just selling."[11]

49. ShinyHunters also stated that the criminal group was willing to negotiate with AT&T.[12]

---

[7] https://www.bleepingcomputer.com/news/security/atandt-denies-data-breach-after-hacker-auctions-70-million-user-database/ (last visited April 10, 2024).
[8] https://www.bleepingcomputer.com/news/security/atandt-denies-data-breach-after-hacker-auctions-70-million-user-database/ (last visited April 10, 2024).
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

50. Shortly after the 2021 Data Incident, a security researcher reported that two of the four individuals in the data samples leaked by ShinyHunters were confirmed to have accounts on att.com.[13]

51. AT&T did not notify its customers, including Plaintiff and Class Members, of the 2021 Data Incident.

52. On or about March 17, 2024, another cybercriminal known as "MajorNelson" posted on an Internet forum the entire dataset of the stolen database from the 2021 Data Incident, the database which ShinyHunters attempted to sell.[14]

53. On March 19, 2024, Troy Hunt—a security researcher and the creator of the data breach notification website "Have I Been Pwned"—posted on his blog about the AT&T Data Breach.[15] In the blog post, Mr. Hunt concluded that the leaked data from the Data Breach was authentic after he spoke with several "Have I Been Pwned" subscribers who were AT&T customers and who confirmed the accuracy of the leaked data.[16]

54. Moreover, Mr. Hunt noted that the Internet forum on which the leaked data was posted in not on the "dark web", but rather on the traditional Web "easily accessed by a normal web browser."[17]

55. The 2021 Data Breach and the 2024 Data Incident caused significant harm to AT&T's former and current customers like Plaintiff and Class Members.

---

[13] *Id.*
[14] https://www.bleepingcomputer.com/news/security/atandt-confirms-data-for-73-million-customers-leaked-on-hacker-forum/ (last visited April 10, 2024).
[15] https://www.troyhunt.com/inside-the-massive-alleged-att-data-breach/ (last visited April 10, 2024).
[16] *Id.*
[17] *Id.*

56. Plaintiff and Class Members provided their Private Information to AT&T with the reasonable expectation and mutual understanding that AT&T would comply with its obligations to keep such information confidential and secure from unauthorized access.

57. Data security is purportedly a critical component of AT&T's business model. On a section of its website, AT&T makes the following statements:

> "We work hard to safeguard your information using technology controls and organization controls. We protect our computer storage and network equipment. We require employees to authenticate themselves to access sensitive data. We limit access to personal information to the people who need access for their jobs. And we require callers and online users to authenticate themselves before we provide account information."[18]

58. On its website, AT&T also maintains a "Privacy Center" for California which contains information concerning the requirements of California Consumer Privacy Act ("CCPA") as it relates to the storage of the data of California residents.[19]

59. Contrary were AT&T's various express assurances that it would take reasonable measures to safeguard the sensitive information entrusted to it – and only share it for an express authorized persons – an "unauthorized" person or persons was able to access its network servers.

60. According to its March 30, 2024, notice letter concerning the Breach, AT&T states it has "launched a robust investigation supported by internal and external cybersecurity experts. Based on [its] preliminary analysis, the data set appears to be from 2019 or earlier impacting approximately 7.6 current AT&T account holders and approximately 65.4 million former account holders."[20]

61. The database files that were compromised included names, mailing addresses, Social Security numbers, and other information related to prior productions.

---

[18] https://about.att.com/privacy/privacy-notice.html (last visited April 10, 2024).
[19] https://about.att.com/privacy/StateLawApproach/california.html (last visited April 10, 2024).
[20] https://about.att.com/story/2024/addressing-data-set-released-on-dark-web.html (last visited April 10, 2024).

62. To date, AT&T has not disclosed specifics of the attack, such as whether ransomware has been used.

63. As such, AT&T failed to secure the PII of the individuals that provided it with this sensitive information. It failed to take appropriate steps to protect the PII of Plaintiff and other Class Members from being disclosed.

**B.** AT&T Failed to Comply with FTC Guidelines

64. AT&T was prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., FTC v. Wyndham Worldwide Corp., 799 F.3d 236 (3d Cir. 2015).

65. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

66. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[21] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone

[21] https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited April 10, 2024).

is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[22]

67. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

68. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

69. These FTC enforcement actions include actions against healthcare providers and partners like AT&T. See, e.g., In the Matter of Labmd, Inc., A Corp, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.")

70. AT&T failed to properly implement basic data security practices.

71. AT&T's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

---

[22] *Id.*

72. AT&T was at all times fully aware of the obligation to protect the Private Information of customers and patients. AT&T was also aware of the significant repercussions that would result from its failure to do so.

**D. Plaintiff and the Class Have Suffered Injury as a Result of AT&T's Data Mismanagement**

73. As a result of AT&T's failure to implement and follow even the most basic security procedures, Plaintiff and Class Members' PII have been and are now in the hands of an unauthorized third-party which may include thieves, unknown criminals, banks, credit companies, and other potentially hostile individuals. Plaintiff and other Class Members now face an increased risk of identity theft, particularly due to the dissemination of their Social Security Number, and will consequentially have to spend, and will continue to spend, significant time and money to protect themselves due to AT&T's Data Breach.

74. Plaintiff and other Class Members have had their most personal and sensitive Private Information disseminated to the public at large and have experienced and will continue to experience emotional pain and mental anguish and embarrassment.

75. Plaintiff and Class Members face an increased risk of identity theft, phishing attacks, and related cybercrimes because of the Data Breach. Those impacted are under heightened and prolonged anxiety and fear, as they will be at risk for falling victim for cybercrimes for years to come.

76. PII is a valuable property right.[23] The value of PII as a commodity is measurable. "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory

[23] See Marc van Lieshout, The Value of Personal Data, 457 IFIP Advances in Information and Communication Technology (May 2015), https://www.researchgate.net/publication/283668023 ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible..."). (last visited April 10, 2024).

frameworks."[24] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[25] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

77. As a result of its real value and the recent large-scale data breaches, identity thieves and cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated, and become more valuable to thieves and more damaging to victims.

78. Personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[26] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web. Criminals can also purchase access to entire company data breaches from $900 to $4,500.[27]

79. Consumers place a high value on the privacy of that data. Researchers shed light on how many consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[28]

---

[24] See Robert Lowes, Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market, Medscape (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192 .(last visited April 10, 2024).

[25] U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017, Interactive Advertising Bureau (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/ (last visited April 10, 2024).

[26] Anita George, Your personal data is for sale on the dark web. Here's how much it costs, Digital Trends (Oct. 16, 2019), accessible at https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs// (last visited April 10, 2024).

[27] Brian Stack, Here's How Much Your Personal Information Is Selling for on the Dark Web, Experian (Dec. 6, 2017), accessible at https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited April 10, 2024).

[28] Janice Y. Tsai et al., The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study, 22(2) Information Systems Research 254 (June 2011), accessible at https://www.jstor.org/stable/23015560?seq=1 (last accessed April 10, 2024).

80. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

81. Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals... because they often have lesser IT defenses and a high incentive to regain access to their data quickly.[29]

82. Plaintiff and members of the Class, as a whole, must immediately devote time, energy, and money to: 1) closely monitor their bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than they already do; 3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

83. Once PII is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of AT&T's conduct. Further, the value of Plaintiff's and Class Members' Private Information has been diminished by its exposure in the Data Breach.

[29] Ben Kochman, FBI, Secret Service Warn of Targeted Ransomware, Law360 (Nov. 18, 2019), accessible at https://www.law360.com/articles/1220974 (last accessed April 10, 2024).

84. As a result of AT&T's failures, Plaintiff and Class Members are at substantial risk of suffering identity theft and fraud or misuse of their Private Information.

85. Plaintiff and members of the Class suffered actual injury from having PII compromised as a result of AT&T's negligent data management and resulting Data Breach including, but not limited to (a) damage to and diminution in the value of their PII, a form of property that AT&T obtained from Plaintiff; (b) violation of their privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

86. For the reasons mentioned above, AT&T's conduct, which allowed the Data Breach to occur, caused Plaintiff and members of the Class these significant injuries and harm.

87. Plaintiff brings this class action against AT&T for their failure to properly secure and safeguard Private Information and for failing to provide timely, accurate, and adequate notice to Plaintiff and other Class Members that their Private Information had been compromised.

88. Plaintiff, individually and on behalf of all other similarly situated individuals, alleges claims in negligence, negligence per se, breach of implied contract, breach of fiduciary duty, unjust enrichment, violations of the California Consumer Privacy Act and California Legal Remedies Act, and California's Unfair Competition Law.

## CLASS ACTION ALLEGATIONS

89. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated ("the Class").

90. Plaintiffs propose the following Class and Subclass definitions, subject to amendment(s) as appropriate:

**Nationwide Class**

> All individuals residing in the United States whose Private Information was compromised as a result of the Data Breach, including all individuals who were sent the Notice of the Data Breach on or around March 30, 2024 ("the Class").

**California Subclass**

> All individuals identified by Defendant (or its agents or affiliates) as being those persons residing in California impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "California Subclass").

91. Collectively, the Class and California Subclass are referred to as the Classes.

92. Excluded from the Class are AT&T's officers and directors, and any entity in which AT&T has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of AT&T. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

93. Plaintiff reserves the right to amend or modify the Class or Subclass definitions as this case progresses.

94. **Numerosity:** The members of the Class are so numerous that joinder of all of them is impracticable. As noted above, there are approximately 73 million individuals.

95. Existence/Predominance of Common Questions of Fact and Law: There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether AT&T unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII;

b. Whether AT&T failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether AT&T's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether AT&T's data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether AT&T owed a duty to Class Members to safeguard their PII;

f. Whether AT&T was subject to (and breached) the FTC Act, the California Confidentiality of Medical Information Act and/or the CCPA;

g. Whether AT&T breached its duty to Class Members to safeguard their PII;

h. Whether computer hackers obtained Class Members' PII in the Data Breach;

i. Whether AT&T knew or should have known that its data security systems and monitoring processes were deficient;

j. Whether AT&T's conduct was negligent;

k. Whether AT&T's acts breaching an implied contract they formed with Plaintiff and the Class Members;

l. Whether AT&T was unjustly enriched to the detriment of Plaintiff and the Class;

m. Whether AT&T failed to provide notice of the Data Breach in a timely manner; and

n. Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

96. **<u>Typicality:</u>** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was compromised in the Data Breach.

97. **Adequacy:** Plaintiff is an adequate representative for the Class because his interests do not conflict with the interests of the Class that he seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex class action litigation—including consumer fraud and automobile defect class action cases—and counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his experienced counsel.

98. **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by AT&T's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by AT&T. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based upon, inter alia, the records (including databases, e-mails, dealership records and files, etc.) AT&T maintains regarding their consumers.

99. Defendant has acted, and refuses to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CLAIMS FOR RELIEF

**COUNT 1**
**NEGLIGENCE**
***(On Behalf of Plaintiff and the Nationwide Class)***

100. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

101. AT&T owed a duty to Plaintiff and all other Class Members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control.

102. AT&T knew, or should have known, the risks of collecting and storing Plaintiff's and all other Class Members' PII and the importance of maintaining secure systems. AT&T knew, or should have known, of the vast uptick in data breaches in recent years. AT&T had a duty to protect the PII of Plaintiff and Class Members.

103. Given the nature of AT&T's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, AT&T should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring, which AT&T had a duty to prevent.

104. AT&T breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiff's and Class Members' PII.

105. It was reasonably foreseeable to AT&T that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would

result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class Members' PII to unauthorized individuals.

106. But for AT&T's negligent conduct or breach of the above-described duties owed to Plaintiff and Class Members, their PII would not have been compromised.

107. As a result of AT&T's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and all other Class Members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, inter alia: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well- established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) actual or attempted fraud.

**COUNT II**
**NEGLIGENCE PER SE**
***(On Behalf of Plaintiff and the Nationwide Class)***

108. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

109. AT&T's duties arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by a business, such as AT&T, of failing to employ reasonable measures to protect and secure PII.

110. AT&T violated Security Rules and Section 5 of the FTCA by failing to use

reasonable measures to protect Plaintiff's and all other Class Members' PII and not complying with applicable industry standards. AT&T's conduct was particularly unreasonable given the nature and amount of PII it obtains and stores, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damages that would result to Plaintiff and the other Class Members.

111. AT&T's violations of Security Rules and Section 5 of the FTCA constitutes negligence per se.

112. Plaintiff and Class Members are within the class of persons that Security Rules and Section 5 of the FTCA were intended to protect.

113. The harm occurring as a result of the Data Breach is the type of harm Security Rules and Section 5 of the FTCA were intended to guard against.

114. It was reasonably foreseeable to AT&T that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class Members' PII to unauthorized individuals.

115. The injury and harm that Plaintiff and the other Class Members suffered was the direct and proximate result of AT&T's violations of Security Rules and Section 5 of the FTCA. Plaintiff and Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, inter alia: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their

PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach; and (vi) actual or attempted fraud.

**COUNT III**
**BREACH OF FIDUCIARY DUTY**
***(On Behalf of Plaintiff and the Nationwide Class)***

116. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

117. Plaintiff and Class Members either directly or indirectly gave AT&T their PII in confidence, believing that AT&T would protect that information. Plaintiff and Class Members would not have provided AT&T with this information had they known it would not be adequately protected. AT&T's acceptance and storage of Plaintiff's and Class Members' PII created a fiduciary relationship between AT&T and Plaintiff and Class Members. In light of this relationship, AT&T must act primarily for the benefit of its consumers, which includes safeguarding and protecting Plaintiff's and Class Members' PII.

118. AT&T has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the integrity of the system containing Plaintiff's and Class Members' PII, failing to safeguard the PII of Plaintiff and Class Members it collected.

119. As a direct and proximate result of AT&T's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PIII; (iv) lost opportunity costs associated with effort attempting to

mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in AT&T's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach; and (vii) actual or attempted fraud.

**COUNT IV**
**UNJUST ENRICHMENT**
***(On Behalf of Plaintiff and the Nationwide Class)***

120. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein. This claim is pleaded in the alternative to the implied contract claim pursuant to Fed. R. Civ. P. 8(d).

121. Plaintiff and Class Members conferred a monetary benefit upon AT&T in the form of monies paid for production services or other services.

122. AT&T accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class Members. AT&T also benefitted from the receipt of Plaintiff's and Class Members' PII.

123. As a result of AT&T's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class Members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

124. AT&T should not be permitted to retain the money belonging to Plaintiff and Class Members because AT&T failed to adequately implement the data privacy and security procedures for itself that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, and local laws. and industry standards.

125. AT&T should be compelled to provide for the benefit of Plaintiff and Class Members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

## COUNT V
## BREACH OF IMPLIED CONTRACT
***(On Behalf of Plaintiff and the Nationwide Class)***

126. Plaintiff realleges and incorporates by reference all allegations of the preceding factual allegations as though fully set forth herein.

127. Defendant required Plaintiff and Class Members to provide, or authorize the transfer of, their PII in order for AT&T to provide services. In exchange, AT&T entered into implied contracts with Plaintiff and Class Members in which AT&T agreed to comply with its statutory and common law duties to protect Plaintiff's and Class Members' PII and to timely notify them in the event of a data breach.

128. Plaintiff and Class Members would not have provided their PII to AT&T had they known that AT&T would not safeguard their PII, as promised, or provide timely notice of a data breach.

129. Plaintiff and Class Members fully performed their obligations under their implied contracts with AT&T.

130. Defendant breached the implied contracts by failing to safeguard Plaintiff's and Class Members' PII and by failing to provide them with timely and accurate notice of the Data Breach.

131. The losses and damages Plaintiff and Class Members sustained (as described above) were the direct and proximate result of AT&T's breach of its implied contracts with Plaintiff and Class Members.

**COUNT VI**
**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT OF 2018 Cal. Civ. Code §§ 1798.100 et seq. (“CCPA”)**
***(On Behalf of Plaintiff Aquelia Walker and the California Subclass)***

132. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

133. As more personal information about consumers is collected by businesses, consumers’ ability to properly protect and safeguard their privacy has decreased. Consumers entrust businesses with their personal information on the understanding that businesses will adequately protect it from unauthorized access.

134. As a result, in 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. Among other things, the CCPA imposes an affirmative duty on certain businesses that maintain personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected.

135. AT&T is subject to the CCPA and failed to implement such procedures which resulted in the Data Breach.

136. Section 1798.150(a)(1) of the CCPA provides: “Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business’ violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for” statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

137. Plaintiff is a "consumer" as defined by Civ. Code § 1798.140(g) because he is natural person residing in the state of California.

138. AT&T is a "business" as defined by Civ. Code § 1798.140(c).

139. The CCPA provides that "personal information" includes "[a]n individual's first name or first initial and the individual's last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted . . . (iii) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account." See Civ. Code § 1798.150(a)(1); Civ. Code § 1798.81.5(d)(1)(A).

140. Plaintiff's Private Information compromised in the Data Breach constitutes "personal information" within the meaning of the CCPA.

141. Through the Data Breach, Plaintiff's private information was accessed without authorization, exfiltrated, and stolen by criminals in a nonencrypted and/or nonredacted format.

142. The Data Breach occurred as a result of AT&T's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

143. Simultaneously herewith, Plaintiff is providing notice to Defendants pursuant to Cal. Civ. Code § 1798.150(b)(1), identifying the specific provisions of the CCPA. Plaintiff alleges AT&T has violated or is violating. Although a cure is not possible under the circumstances, if (as expected) AT&T is unable to cure or does not cure the violation within 30 days, Plaintiff will amend this Complaint to pursue actual or statutory damages as permitted by Cal. Civ. Code § 1798.150(a)(1)(A).

144. As a result of AT&T's failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, Plaintiff seeks statutory damages of up

to $750 per class member (and no less than $100 per class member), actual damages to the extent they exceed statutory damages, injunctive and declaratory relief, and any other relief as deemed appropriate by the Court.

## COUNT VII
## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
## Cal. Civ. Code §§ 1750 et seq. ("CLRA")
***(On Behalf of Plaintiff Aquelia Walker and the California Subclass)***

145. Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

146. This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, et seq. This cause of action does not seek monetary damages at this time but is limited solely to injunctive relief. Plaintiff will later amend this Complaint to seek damages in accordance with the CLRA after providing Defendants with notice required by California Civil Code § 1782.

147. Plaintiff and Class Members are "consumers," as the term is defined by California Civil Code § 1761(d).

148. Plaintiff, Class Members and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

149. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct undertaken by Defendants was likely to deceive consumers.

150. Cal. Civ. Code § 1770(a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

151. Defendants violated this provision by representing that Defendants took appropriate measures to protect Plaintiff's and the Class Members' PII. Additionally, Defendants improperly handled, stored, or protected either unencrypted or partially encrypted data.

152. As a result, Plaintiff and the Class Members were induced to provide their PII to Defendants.

153. As a result of engaging in such conduct, Defendants have violated Civil Code § 1770.

154. Pursuant to Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Defendants from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

155. Plaintiff and the Class Members suffered injuries caused by Defendants' misrepresentations, because they provided their PII believing that Defendants would adequately protect this information.

156. Plaintiff and Class Members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

157. The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff and members of the Class.

**COUNT VIII**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW Cal. Bus. and Prof. Code §§ 17200, et seq. ("UCL")**
***(On Behalf of Plaintiff Aquelia Walker and the California Subclass)***

158. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

159. Plaintiff brings this claim on behalf of themselves and the Class.

160. The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et seq. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

161. By reason of Defendants' above-described wrongful actions, inaction, and omission, the resulting Data Breach, and the unauthorized disclosure of Plaintiff's and Class members' PII, Defendants engaged in unlawful, unfair, and fraudulent practices within the meaning of the UCL.

162. Defendants' business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, in that the private and confidential PII of consumers has been compromised for all to see, use, or otherwise exploit.

163. Defendants' practices were unlawful and in violation of the CCPA and CLRA and Defendants' own privacy policy because Defendants Yahoo failed to take reasonable measures to protect Plaintiff's and Class members' PII.

164. Defendants' business practices as alleged herein are fraudulent because they are likely to deceive consumers into believing that the PII they provide to Defendants will remain private and secure, when in fact it was not private and secure.

165. Plaintiff and Class Members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendants' above-described wrongful actions, inaction, and omissions including, inter alia, the unauthorized release and disclosure of their PII.

166. Defendants' above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Class

Members' PII also constitute "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200 et seq., in that Defendants' conduct was substantially injurious to Plaintiff and Class Members, offensive to public policy, immoral, unethical, oppressive and unscrupulous, and the gravity of Defendants' conduct outweighs any alleged benefits attributable to such conduct.

167. But for Defendant's misrepresentations and omissions, Plaintiff and Class Members would not have provided their PII to Defendants or would have insisted that their PII be more securely protected.

168. As a direct and proximate result of Defendants' above-described wrongful actions, inaction, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff and Class Members' PII, they have been injured as follows: (1) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII entrusted to Defendants; (3) the increased, imminent risk of fraud and identity theft; (4) the compromise, publication, and/or theft of their PII; and (5) costs associated with monitoring their PII, amongst other things.

169. Plaintiff takes upon herself enforcement of the laws violated by Defendants in connection with the reckless and negligent disclosure of PII. There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiff by forcing her to pay attorneys' fees and costs from the recovery in this action. Therefore, an award of attorneys' fees and costs is appropriate under California Code of Civil Procedure § 1021.5.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, pray for judgment as follows:

a. For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class;

b. For equitable relief enjoining AT&T from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII;

c. For equitable relief compelling AT&T to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Data Breach;

d. For an order requiring AT&T to pay for credit monitoring services for Plaintiff and the Class of a duration to be determined at trial;

e. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

f. For an award of punitive damages, as allowable by law;

g. For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

h. Pre- and post-judgment interest on any amounts awarded; and

i. Such other and further relief as this court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 11, 2024

Respectfully submitted,

By: */s/ Ann Jernow*

Ann Jernow, SBN 197060
Jennifer Czeisler *(Pro Hac Vice application forthcoming)*
Edward Ciolko *(Pro Hac Vice application forthcoming)*
**Sterlington, PLLC**
One World Trade Center
85th Floor
New York, NY 10007
(516) 457-9571
ann.jernow@sterlingtonlaw.com
jen.czeisler@sterlingtonlaw.com
edward.ciolko@sterlingtonlaw.com

James M. Evangelista
**Evangelista Worley LLC**
10 Glenlake Parkway, Suite 130
Atlanta, GA 30328
(404) 205-8400
jim@ewlawllc.com

*Attorneys for Plaintiff and the Putative Class*